UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VICTORIA C. THARP,

        Plaintiff,

    v.

                                Case No. 26-cv-358-pp

FROEDTERT HOSPITAL OF WISCONSIN
(THEDACARE HEALTH INC.),
GEORGETTE YARESH, COURTNEY VERMILION
and BRITTANY SCHULTZ,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

---

On March 5, 2026, the plaintiff—who is representing herself—filed a complaint, dkt. no. 1, and a request to proceed without prepaying the filing fee, dkt. no. 2. The complaint alleges that the defendants discriminated against the plaintiff because of her race and disability during her employment at Froedtert Hospital's Water[town] Plank Road location. Dkt. No. 1 at 3.

The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court will dismiss the individual defendants and allow the plaintiff to proceed on a race-based hostile work environment claim and a retaliation claim against Froedtert Hospital.

## I.    Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532,

1

534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose her financial condition, and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff states that she is employed with Aurora Health Care and earns $3,600 per month in wages. Dkt. No. 2 at 1–2. The plaintiff's income is offset by her stated $3,566 in expenses, including rent, car payments, credit card payments, other household expenses and support for her minor grandson. Id. at 1–3. The plaintiff states that she has no cash or assets other than her vehicle. Id. at 3–4. She also states that she must pay about $150 per month out-of-pocket for medical expenses. Id. at 4.

The court finds that the plaintiff does not have the ability to prepay the filing fee and will grant her motion for leave to proceed without doing so. The court advises the plaintiff, however, that she still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original)). The plaintiff must pay the filing fee over time, as she is able.

## II.   Screening the Complaint

### A.   Legal Standard

The court next must "screen" the complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

### B.    The Complaint

The plaintiff filed two documents that could be considered the operative complaint. The first document is a complaint, written on the court's standard *pro se* complaint form. <u>See</u> Dkt. No. 1. The second is a complaint on the court's standard employment discrimination complaint form. <u>See</u> Dkt. No. 1-1. The former contains a written narrative describing the plaintiff's claims, while the latter provides more information specific to employment discrimination claims, such as what law the plaintiff is suing under and whether the plaintiff has exhausted her administrative remedies. Because the plaintiff is representing herself and may not have known that she should file only one of these forms, the court will consider the information on both forms as part of the "complaint."

The plaintiff alleges that she "began experiencing discrimination and difficulties" with her colleagues beginning on October 7, 2024 (the second week of her employment). Dkt. No. 1 at 3. She alleges that medical assistant Brittany Schultz made "racially charged remarks" toward her; threw objects at her (including papers, staplers and forms); and removed the plaintiff's belongings from their shared office. <u>Id.</u> at 2–3. The plaintiff alleges that ambulatory supervisor Courtney Vermillion threatened her, "boasted about [the plaintiff's] incompetence in front of others and consistently refused to provide the support [the plaintiff] needed." <u>Id.</u> at 3. The plaintiff alleges that after she filed a workers' compensation claim "due to the anxiety [she] was experiencing,"

4

Vermillion's verbal abuse escalated. Id. She asserts that Vermillion stated that the plaintiff "should not be allowed to work for making the claim." Id.

The plaintiff alleges that she reported the derogatory comments to clinic manager Georgette Yaresh, but that Yaresh "ignored [the plaintiff's] safety and allowed a toxic environment to persist." Id. The plaintiff avers that she "promptly reported the issues, hoping for a resolution, but unfortunately, [her] concerns were dismissed and unaddressed." Id. She alleges that the defendants' actions "have resulted in profound emotional turmoil, manifesting as heightened anxiety and significant disruptions in [her] daily life" including "an escalation of mental health challenges that have made it increasingly difficult to navigate personal and professional relationships." Id. at 2. The plaintiff requests $900,000 in damages for emotional distress as well as workers' compensation, which she asserts was "unjustly denied" after she reported "psychological injuries directly related to [her] employment." Id. at 4.

The plaintiff names as defendants Froedtert Hospital and individual employees Schultz, Vermillion and Yaresh. Dkt. No. 1-1 at 2. She alleges that the defendants violated Title VII of the Civil Rights Act of 1964 and Wisconsin's Health Care Worker Protection Act (Wis. Stat. §146.997). Id. at 3. She asserts that the defendants engaged in discriminatory conduct including termination, failure to accommodate her disability, retaliation and "failure to provide treatment for mental health." Id. at 4. She alleges that the discriminatory actions took place between October 7, 2024 and February 29, 2025. Id. She asserts that the discrimination was based on her race and color (African

5

American) and her disability (anxiety). Id. The plaintiff provides the following

additional facts:

> I was rehired September 23, 2024, on September 26, 2024, first interaction with Brittany Schultz
> October 4, 2024 – sent letter requesting accommodations and training
> November 12, 2024 – submitted a complaint to human resources about treatment
> January 7th 2025 – informed Courtney V, I have developed anxiety and nervousness
> January 7th, 2025 – submitted workers' compensation claim, also sent an email to Sarah Grossmeyer and Megan Manthel about the treatment I was receiving from my supervisor, Courtney Vermillion (have audio)
> January 17th, first appointment with the Froedtert workplace clinic regarding anxiety
> 02/29/2024 fired by Froedtert Hospital before resignation date

Id. at 5.

The plaintiff states that on September 17, 2025, she filed a charge of

discrimination with the Equal Employment Opportunity Commission and

received a notice of right to sue letter. Id. at 5. The plaintiff attached her notice

of right to sue letter from the EEOC, which is dated February 23, 2026. Dkt.

No. 1-2 at 2. The plaintiff also attached her response to the defendants'

position statement and several exhibits related to her claim. Dkt. No. 1-3.

> C.    Analysis

The plaintiff is alleging that the defendants discriminated against her

based on her race and disability by subjecting her to a hostile work

environment. She also alleges that she was retaliated against for reporting

discriminatory actions. Among other things, title VII of the Civil Rights Act of

1964 prohibits employment discrimination based on race. 42 U.S.C. §2000e-

6

2(a). "To successfully prove a claim for race-based hostile work environment, [the plaintiff] must establish that: "(1) [s]he was subject to unwelcome harassment; (2) the harassment was based on [her] race; (3) the harassment was severe or pervasive so as to alter the conditions of [her] work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." Jones v. Das, 164 F.4th 1024, 1032 (7th Cir. 2026) (quoting Cole v. Board of Trustees of N. Ill. Univ., 838 F.3d 888, 895–96 (7th Cir. 2016)). To determine whether the harassment was severe or pervasive, courts consider the totality of the circumstances, including

> (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim.

Scaife v. United States Dep't of Veterans Affairs, 49 F.4th 1109, 1116 (7th Cir. 2022).

Construing the allegations liberally, the plaintiff sufficiently has alleged that she suffered from severe or pervasive harassment based on her race. She alleges that Schultz and Vermillion made derogatory and racially charged remarks toward her beginning in the second week of her employment and continuing throughout her time at Froedtert. The plaintiff alleges that Schultz also physically threw objects at her and that Vermillion threatened to "confront [the plaintiff] in the parking lot." The plaintiff asserts that the behavior interfered with her work performance and has continued to have a negative

7

impact on her mental health. The plaintiff has stated a race-based hostile work environment claim.

The plaintiff also mentions that the defendants discriminated against her based on her anxiety. Anxiety and other mental health conditions may be considered disabilities under the Americans with Disabilities Act (ADA) if they substantially limit the plaintiff's ability to engage in one or more major life activities. See, *e.g.*, Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1061 (7th Cir. 2000) (citing 29 C.F.R. §1630.2(h)(2)). Hostile work environment claims under the ADA are analyzed using the same framework as hostile work environment claims under Title VII. See Ford v. Marion Cnty. Sheriff's Off., 942 F.3d 839, 852 (7th Cir. 2019). Although the complaint states a claim for a hostile work environment based on the plaintiff's race, it does not state a claim for a hostile work environment based on the plaintiff's disability, because the plaintiff's complaint lacks allegations that Schultz and Vermillion's actions were motivated by the plaintiff's disability. Rather, she alleges that Schultz and Vermillion threatened and insulted her *because of her race,* not because of her disability. The plaintiff has not stated a disability-based hostile work environment claim.

The plaintiff asserts that the defendants retaliated against her after she complained to Georgette Yaresh about Schultz and Vermillion's allegedly discriminatory conduct. To state a retaliation claim under Title VII or the ADA, the plaintiff must show "(1) [s]he engaged in protected activity, (2) [s]he suffered an adverse employment action, and (3) there was a causal connection between

8

the two." <u>Poullard v. McDonald</u>, 829 F.3d 844, 856 (7th Cir. 2016) (citing

<u>Castro v. DeVry Univ., Inc.</u>, 786 F.3d 559, 564 (7th Cir. 2015)). The plaintiff

has alleged that after she reported discrimination to Yaresh, the discriminatory

and hostile behavior escalated. Construing the allegations liberally, that is

sufficient at this stage to allege "an ongoing campaign of retaliation" after the

plaintiff engaged in the protected activity of reporting discrimination. <u>See</u>

<u>Carlson v. CSX Transp., Inc.</u>, 758 F.3d 819, 829 (7th Cir. 2014). The plaintiff

has stated a retaliation claim.

The plaintiff alleges that the defendants violated Wisconsin's Health Care

Worker Protection Act. Under Wis. Stat. §146.997, "health care facilities are

prohibited from taking disciplinary action against staff who report violations of

law or ethical standards by their employer." <u>Goggins v. Rogers Mem'l Hosp.</u>

<u>Inc.</u>, 274 Wis. 2d 754, 769 (Wis. Ct. App. 2004). But at least one other court in

this district has held that the statute does not create a separate civil cause of

action under which the plaintiff can sue. <u>See</u> <u>Zocher-Burke v. Quality Addiction</u>

<u>Mgmt., Inc.</u>, Case No. 06-C-693, 2007 WL 2821989, at *6 (E.D. Wis. Sept. 27,

2007). The Wisconsin Department of Workforce Development (DWD) is

responsible for investigating and enforcing alleged violations of this statute; the

statute says nothing about a plaintiff's ability to sue her employer for a

violation. <u>See</u> Wis. Stat. §146.997(4) (stating that the DWD may take action to

enforce the statute).

Even if the plaintiff could bring a claim under this statute, the plaintiff

does not appear to have sufficiently alleged that she took any protected actions

9

under the statute. Protected activity under Wis. Stat. §146.997(2) includes reports that a health care facility or its employees have "violated any state law or rule or federal law or regulation" or that any situation exists that "poses a potential risk to public health or safety." It is not clear that "protected activity" under the statute extends to making a claim of employment discrimination. The plaintiff has not stated a claim under Wisconsin's Health Care Worker Protection Act.

Finally, the plaintiff brought her complaint against her former employer and several coworkers and supervisors. Employment discrimination claims under Title VII and the ADA cannot be brought against individuals in their individual capacities. See Williams v. Banning, 72 F.3d 552, 553–55 (7th Cir. 1995). The plaintiff can bring such claims only against her employer—Froedtert Hospital. In this context, Schultz, Vermillion and Yaresh's actions are legally attributable to their employer; only the employer can be liable for those allegedly discriminatory actions. The court will dismiss with prejudice the individual defendants.

The court will order the U.S. Marshals Service to serve defendant Froedtert Hospital, which must then answer or otherwise respond to the complaint. Once the defendant has appeared and responded, the court will provide further instruction about next steps.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

10

The court **ORDERS** that defendants Georgette Yaresh, Courtney Vermilion and Brittany Schultz are **DISMISSED WITH PREJUDICE**.

The court **ORDERS** that the plaintiff may proceed against Froedtert Hospital on a race-based hostile work environment claim and a retaliation claim. The court **ORDERS** that the plaintiff's disability discrimination claim and Wisconsin Health Care Worker Protection Act claim are **DISMISSED**.

The court **ORDERS** the United States Marshals Service to serve a copy of the complaint and this order on defendant Froedtert Hospital only under Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. Although Congress requires the court to order service by the U.S. Marshals Service precisely because indigent plaintiffs do not have the funds to pay filing fees, it has not made any provision for these service fees to be waived by either the court or the U.S. Marshals Service. The court is not involved in collection of the fee.

The court **ORDERS** Froedtert Hospital to file a responsive pleading within the time permitted by the Federal Rules of Civil Procedure.

11

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court advises the plaintiff that if she fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on her failure to diligently pursue it. The plaintiff must notify the Clerk of Court of any change of address. The plaintiff's failure to keep the court advised of her address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin this 23rd day of June, 2026.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**